Good morning. Welcome to the 11th Circuit. We're happy to have you here with us today. I just want to run through a quick reminder on our timing system. I think you're all familiar with it, but just as a reminder, when the yellow light goes on, you've got two minutes left. When the red light goes on, your time is up. We ask that you please stop and observe the red light. Of course, the exception to that is if we've asked you a question, then we do want you to answer that question. Go ahead, answer it, even if it takes you over the time limit. All right. And with that, we are going to begin today with the case of United States of America v. Michael Adix. And we'll hear first from Mr. Darkin. Kevin Darkin May it please the Court? My name is Kevin Darkin. I'm a fellow counsel for Dr. Michael Adix. Subject to your questions, I'd like to do four things in this initial argument. First, talk about the central issues of the trial. Second, the key facts. Third, why there was abusive discretion. And fourth, why it was not harmless error. This was a case about Dr. Adix's returns for four years while he was in an emergency room position practicing in Missouri. The payments that for his services went to two Wyoming LLCs, one called I-Corp and one called ICC. I-Corp and ICC then paid a third Florida LLC called Pinnacle. And Dr. Adix reported all the income from Pinnacle. The issue is there was about two-thirds of the income that was paid to ICC and I-Corp, which did not flow to Pinnacle and which Dr. Adix did not report because as he testified, he believed it was not his income. He testified that ICC and I-Corp were his wife, Kareen's entities. But he did spend money from there, didn't he? And the income was, the way that the money, the way that ICC and I-Corp received the money was as payment for Adix's services, right? I mean... You're correct on both counts, Your Honor. The money did flow to him and to his wife. Isn't that a problem for him if he is using the money from there and it's also his income? I mean, if he could show that he thought that the, that his wife was paying taxes on it, I mean, that's one thing, but there was a trial on this and that position was rejected. Your Honor, this is not honoring sufficiency of the evidence. What was not heard by the jury was that in December 2018, Kareen and Adix paid, filed tax returns for ICC and I-Corp. All the jury heard, Your Honor, was his uncorroborated testimony that ICC and I-Corp were his wife's corporations and that he did not believe that income was his. But he testified at the trial. Why couldn't he have just testified directly about what he believed at the time that he thought Kareen would be filing these taxes? But why couldn't he have just said that when he testified at the trial? He didn't say it exactly in those words, and the government points that out, but it's implied. He said it was her income. So if it's her income, then obviously she should have reported it. And there were three government witnesses that testified to that. If you're an officer of a corporation, it's... So if he could testify to that, I thought this income was going to be reported by Kareen. If he could testify to that himself, then why isn't the exclusion of the tax returns harmless error? That's the question, Your Honor, and the answer is because this would have been unimpeachable evidence from the government, from the IRS witness. The IRS witness was asked by the prosecutor, did Kareen Addix file returns in 2012 through 2016? No. Did ICC file returns in that period? No. Did ICOR file returns in that period? No. What he was not able to get out was that in December 2018, Kareen Addix, during the course of this investigation, stepped forward and claimed that income. So he wasn't seeking to have the 2018 tax return admitted in the evidence. He was trying to get this in through the testimony of the government agent. He was trying to get it in, correct. And so there's an exception to the hearsay rule? It's not hearsay, Your Honor. It wasn't hearsay when the government put it in. It's not a statement by anybody. It's just a statement that this witness researched the records and found this evidence, which is what the government put in in their case. There were returns filed in 2018. There were not returns filed in 2012 through 2016. But here's the problem, right? Wasn't the reason that your client offered for admitting that evidence about the 2018 filing by Kareen that it was probative of Addix's state of mind at the time that he didn't file in 2012 through 2016? And didn't the district court conclude that filing in 2018 couldn't show what Addix thought in 2012 through 2016, or it wasn't really probative of that? Isn't that what the district court concluded? You're correct, Your Honor. However... So why is that an abuse of discretion? Because of the circuit precedent in the Garber case Anbank, Old Fifth Circuit case from 1979, and the Lankford case from this court in 1992. The issue in Garber was precisely this timing issue. The district court in Garber did not let in an expert opinion that had to do with whether blood plasma was taxable income or not. There was an expert opinion. The district court said no. The defendant didn't have that opinion at the time she filed her tax returns, and the Old Fifth Circuit reversed and said that opinion should have been admitted even though she didn't have that opinion at the time. What was the time frame in that case? I don't know the precise years, but the expert opinion came at trial, which was sometime after the... Yeah, the time frame here is two years. That's a long time. That was one of the factors that the trial judge took into consideration in this case in deciding to exclude the testimony about the 2018 tax returns. That's a long time. Well, in Lankford, Your Honor, it was the same expert opinion issue, and that's this court, the Eleventh Circuit, and in that case the same thing. The defendant did not have an expert opinion that concerned a gift to someone who was a political candidate, whether that was income or not. Guy goes to trial, tries to get his expert to testify. District Court says no. The Eleventh Circuit reverses, and in both cases in Garber, the Old Fifth Circuit said the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent in criminal tax cases. But in both Garber and Lankford, isn't it the case that there was expert testimony involved and the trial court had already permitted the government to provide expert testimony of its own going to willfulness? That's the case in Garber, I think, Your Honor. I'm not sure about Lankford. I think it's in Lankford as well. Well, in this case, Your Honor, obviously... And let me ask you one other thing to address while you're addressing that. Did you raise the reasonableness argument at all before the trial court? Well, I wasn't at the trial, Your Honor. I mean, I understand, your client. Because that's another problem, right? He raised the argument that it was very important to present that evidence. He didn't use the word reasonableness. Well, his argument was to show state of mind, right? That's what his argument was, and that's his only argument that he made, isn't it? Yes. So that's a problem for him. Why isn't that a problem? Because it was implicit what was going on. What he was trying to do was corroborate his client's uncorroborated testimony. But aren't you supposed to... I mean, the whole point of objections or to raise something at the trial court is to let the trial court know what the objection is. So you can't make something implicit. Don't you have to make it explicit what your objection is? Well, maybe he didn't make it as well as he could have. Maybe he didn't make it as clear as he could have. But he was clearly trying to introduce evidence to corroborate his client's uncorroborated testimony that this was his wife's, that his wife had claimed this. And this was the best way he could do it. This wasn't the wife... But did he, I mean, he said it was to corroborate. But see, he didn't really testify directly to that when he testified at the trial, though, did he? Did he go ahead and say, I thought that my wife included this income in 2018 on that tax return? He didn't use those words, Your Honor. He said, I thought this was my wife's income. My wife was responsible for filing for ICC and I-Corp. It wasn't my income. I filed everything that came through Pinnacle. That's what he said. Yeah. So who was the declarant of the tax returns? It wasn't him. It was his wife, right? So if that's the case, I don't know how the state of mind hearsay exception to the Rule 8033 would apply. Your Honor, he wasn't seeking, the trial counsel was not seeking to introduce the tax returns for the truthfulness of the returns, just the fact that they were filed by Corrine Addix, that she claimed that income, ICC income and I-Corp income as her income. That's all he was trying to do. He explicitly told the judge multiple times he was not seeking to introduce the returns. And then given all the other evidence in the case, even if that was an error, that was harmful to error. Yes, Your Honor. And here's why. And this gets to the realities of trial, right? So suppose he had Corrine Addix testify. She would have been crucified on cross-examination. You're the wife. You're relying on your husband's income. If he goes to prison, you have no income, right? And the jury would have been like, we don't believe her. But he had the opportunity to get this out of the same IRS witness who testified for the government. All he had to do was ask one question. The guy said there were no returns from ICC, Corrine, I-Corp 2012 through 2016. He just needed one question. Were there any returns filed by Corrine Addix for ICC and I-Corp after 2016? Yes. Oh yeah? When was that? 2018. That would have been unrebuttable testimony from a government witness of admission by conduct, an admission by conduct of Corrine Addix, that this was her income and couldn't have been impeached, right? That never came in. The government never heard that. I mean, the jury never heard that. They heard was the uncorroborated testimony of a defendant who was trying to, you know, save his own skin in the government's view by saying, this is my wife's income. There's nothing to back it up. But there was evidence to back it up. Now, could it have been crossed? Yeah. You know, argued? Yeah. This happened later. Yes. It happened during the course of the investigation. Yes. Wasn't it convenient that the wife said this at that time? Yes. And that's all fodder for the jury. But the jury never heard that. And they should have heard that. And they should have evaluated that. And that was critical to their decision because all they had was uncorroborated testimony of a defendant. But there was evidence to the contrary. And they should have heard that. All right. Thank you, counsel. You have reserved three minutes for rebuttal. All right. We'll hear next from the government. Good morning, Your Honor. May it please the court. Sean Siakinen for the United States. I think there are a number of grounds upon which this court could affirm the district court's ruling. I think that the district court plainly got this right. And here's the the biggest reason why. Dr. Adix never moved to admit these tax returns themselves. He was admitting the returns that his wife filed in 2018. And he was crystal clear that he was not seeking to admit them or nor to admit the content of those returns. And he never proffered what those returns might show. So we don't know. There's nothing in the record to suggest either in what capacity his wife filed those returns. We don't know. We can't assume whether she filed them as an owner or a shareholder. We don't know whether she may have filed them as an officer or officer of those corporations or what type of officer. And more importantly, we don't know what those returns would have shown. We don't know what income she would have claimed on those returns. We don't know if she claimed any of the income that Dr. Adix omitted from his returns years earlier when he filed in 2015 and 2016 fraudulently underreporting the income that he had earned in those years. And I think that's the simplest and most straightforward basis to affirm. Can I ask you a question? In the trial, did it ever come out why? Because my understanding is that the income that ICC and I-Corps had was really his income, the services that he was providing. Did he ever, or is there any evidence that he received a K-1 or any kind of a 1099 from ICC or I-Corp? K-1, I don't know. The 1099s that are in evidence were 1099s that were issued by each of the hospitals for which he provided services to the three corporations through which he had structured his employment agreement with the hospitals. And one of those companies was ICC or I-Corp? ICC was one. I-Corp was another. And those are the two whose ownership is not clear. And those are the two for whom his wife very belatedly filed returns at the end of 2018. And did that all came out in trial, how it was structured? I'm sorry, how what was structured? How the payments were structured from the services that he rendered to the hospitals. The best evidence that I could point you to on that, Your Honor, would be Exhibit 11A. And this is a summary exhibit of Revenue Agent John Clark's testimony. And 11A shows how much money Dr. Adix earned, excuse me, to be more precise, it shows how much money each hospital paid for Dr. Adix's service in each of the four years in question here. And it shows through color coding to which of the three legal entities his employment relationship with each of those hospitals was structured for that year. Okay, thank you. So other than that, Mr. Darkin calls the court's attention to our prior decision in the United States versus Langford, where we said that you get, quote, wide latitude, close quote, in the introduction of evidence to show lack of intent. Isn't that what this case is all about? He didn't intend to, you know, to commit this crime. I mean, this case is all about whether or not there was willfulness or intent. It's all about his state of mind. And so why didn't the court give this testimony wide latitude, as we said it is required to do in United States versus Langford? I would say that Langford and the other cases stand for the proposition of wide latitude, but not unbounded latitude to introduce irrelevant evidence that is completely detached from intent. And I think that's what this is about. It wasn't relevant to his intent? No, because of what I mentioned at the outset. The evidence that the district court excluded was only, it was two things. So the first was on the first day of trial, he said that he wanted to ask the IRS records custodian about whether he had pulled records of tax returns filed after 2016 by Mrs. Adix on behalf of those corporations or herself, referring to the returns that she filed in 2018. And he was very clear that he was not seeking to either the returns themselves or their content. Simply the mere fact, he simply wanted to elicit testimony that she had filed something of unknown content in some unknown capacity on behalf of these corporations. And so... Right, but that was the whole point of the case, which is that there was a failure to file, right, to report this income. So how is it not relevant? Because he didn't proffer that the tax returns would have shown that she actually reported any of the income that he failed to report. He simply, he didn't proffer anything. All that he sought to admit, to elicit, was testimony that his wife had filed something of unknown content, some tax returns in some capacity. We don't know whether she was the owner or shareholder and officer of those corporations. We don't know in what capacity she filed it and we don't know, he didn't proffer, what income she reported on those forms. So I don't think that the mere fact in isolation that she filed something... Ma'am, can I ask you a question? Did you ever, in the trial, did you ever proffer that ICC or I-Corp, that he was a... I mean, I don't know. Was it an LLC? Was it a PA? What was it? I'm not sure, Your Honor. But that's all relevant. I mean, in order, if you were like a member, then you have to file an individualized tax return for purposes of that, the income coming into that LLC. That may be, Your Honor, and Mr. Adix certainly did not proffer that. I can say, here's what he said. This is, this is, is the burden of proof not on you, the government? Well, Mr. Adix is challenging the exclusion of evidence and on appeal, this Court will typically only review what, what the record reflects that evidence would have or could have shown. And he didn't proffer anything along those lines or anything else about what these returns might have shown, other than the fact that his wife purportedly filed them in some unknown capacity on behalf of these corporations in 2018. That's, that's all that he, that he asked. And I think this is why, when the District Court denied his post-trial Rule 33 motion after, after post-trial briefing, the District Court noted that it was denying the motion because it agreed with the government's arguments in response and also because he had failed to adequately proffer what this evidence would have shown or why he wanted to admit it to a degree that would have allowed the District Court to... So, so do we know from the record with respect to the 2018 filing by Corrine, whether it, whether it filed for the income that Dr. Adix made that went into ICC and I-Corp? No, and that's precisely my point. So we don't, so it doesn't tell us whether or not she actually, she actually claimed that income? Exactly. That's, that is my point. And that's the main reason why I think the testimony that he elicited... Well, we don't know it because we don't have the 2018 return, though, right? Yes. And whose fault is that? There are two ways he could have known it. If he had moved to admit the returns or if he had proffered what the returns might have shown, then, then the Court could make assumptions about whether the content of those returns would have been helpful or relevant. But if it, if he had proffered it, it would have corroborated his belief about whether or not he had to report payments from ICC or I-Corp as his income for 2012 through 2015, though, wasn't it? That would have a somewhat closer case, but I'm still not sure I would agree with you, Your Honor. And here's why. His defense is that he believed in 2015 and 2016, when he filed his fraudulent tax returns, that he didn't need to report all of his income because it was going to those corporations that his wife owned. Now, putting aside who actually owned those corporations, which is not in the record and not apparent from the testimony that he sought to elicit... But that's where I'm having an issue because, again, isn't the burden of proof on you to show that that income that was going to those companies, ICC or I-Corp, that he was a member or he was an something to do with that income that was going in there? It was certainly our burden to prove, it was our burden to prove that he understated his income. And so we did that in two ways, primarily, I think, through the testimony of the revenue agent, John Clark, that I mentioned earlier in reference to Exhibit 11A. And then Exhibit 11B further summarizes John Clark's testimony about, he specifically described, how much money Dr. Adix reported on Line 22 of each tax return in the four years for which he was charged. And then it further reported, based on his review of all the records, how much money he should have reported. Was there evidence that he had spent money in excess of what he had received? And was there evidence of that type? There certainly was evidence which the jury could have reasonably inferred that Dr. Adix helped to spend some or a significant portion of that money. From ICC and I-Corp, right? Yeah, this would be Exhibit 11C. And it was up to the jury to determine whether it believed that Dr. Adix knew that that income was his or that his wife was going to be, that it was effectively hers, right? That was, I mean, that was the issue. It was up to the jury to decide that based on the evidence that was presented. Did Dr. Adix testify? He testified, yes. Right. And so the jury rejected his testimony, I guess. And the closest that Dr. Adix came to asserting this professed defense on the stand was he said that he believed that the tax returns that he filed each year were accurate, included accurate representations based upon the information available. He did not specifically say that he thought that all or any portion of the income necessarily would have been claimed by his wife. He didn't explain why. I think the closest he came to this professed defense on the stand was this vague statement that he believed that all of the representations were accurate based upon information available. Can I ask you one more question? I assume, because I don't remember seeing this now, I didn't look for this particular fact. When he filed the tax returns, did they file as a married couple or did they file separately? No, that was the issue. When they were first caught with their hands in the cookie jar, Dr. Adix hires a CPA and provides partial incomplete information to the CPA. He doesn't provide any information about income that he received through ICC or I-Corps, only income that he received through Pinnacle. And he tells the CPA, my wife will file separately. And so, and that was in 2015, 2016. And then she did not do so. And these are tax returns. We're 2012, 2013 and 2014 and then 2015. And his wife only eventually filed returns for ICC and I-Corps. We don't know in what capacity or claiming what income, but she only filed anything very late in 2018 then, years after Dr. Adix filed his returns. And after they were caught again with their hand in the cookie jar and IRS investigators inform them, hey, look, we're looking, we don't see anything for these other two corporations and you've been referred for criminal prosecution. And then, and only then, two months later, does she file something on behalf of these corporations and we don't know what she filed or in what capacity. So, I mean, I know you've been talking about this all along, but just to sort of wrap it up in a neat little bow for us as to what your argument is. Let's assume, and the issue here is whether or not it was, whether it was error and whether if so, it was harmful error for the district court not to allow the testimony that, or the question as to whether she filed in 2018 on behalf of those corporations, right? That's it. Okay. So let's assume that we find that it was an abuse of discretion. What is your best argument for why that was harmless? In short, because of the overwhelming evidence of what his intent was, regardless of what this testimony would have shown. Why don't you take that off for us? Sure. So first, Dr. Adix, who, by the way, has a Master's of Business Administration, earned nearly $2 million as a traveling ER doctor in those four years, okay? In June 2015, the IRS noticed that he had not filed taxes for the 2012, 2013, 2014. They come knocking on his door. They leave a card. He doesn't respond. Weeks later, a month later, they levy the bank accounts belonging to the couple, and then the couple promptly goes out, obtains counsel, and contacts the IRS and provides powers of attorney. Then, that's when Dr. Adix then hires a CPA to file returns for him, and the only thing that he files, because this is the only information that he gave the CPA, he files Dr. Adix's personal 1040s, which formed the basis of the fraudulent statements charged in this indictment, and he files returns on behalf of Pinnacle, which was one of the three corporations through which he received payments from the hospitals. Two things about the information that he gave the CPA. First, obviously, he excluded, he did not provide any information about income that he had earned, that he had received through ICC or I-Corps, and the second thing that I think is relevant is he did not accurately report to the CPA the income that he didn't report all of his income to the Internal Revenue Service, but the issue in the case is whether or not he intended to commit the crime, because this is an intent required statute that he was charged with. The excluded evidence goes directly to his intent to commit the crime, and if it goes directly to his intent to commit the crime, then isn't it harmful? Well, first, I think the facts that I've mentioned do bear on his intent, and I have more facts. I do have more facts to check off, but I think make even more clear that this was clearly a conscious scheme to evade having to pay taxes, that he knew what he was doing and that this was not some innocent mistake. And just to finish the point about the Pinnacle income, if you look at Exhibit 11A that I referred to, Dr. Adix, in fact, only earned about $10,000 in 2012 through his Pinnacle Corporation, nothing in 2013, only about $7,000 in 2014, and then $120,000 in 2015. And so just to take 2012, for example, and I'm sorry I don't have those exhibits in front of me, but... I know I asked you the question. I'm going to ask you to wrap it up, though, a little bit if you can. Sure. The point that I'm trying to make here is that he overstated his income for Pinnacle when he gave these documents to his CPA. I think indicating some degree of mens rea, this wasn't a mistake. He didn't, it wasn't simply, he did not accurately report the Pinnacle. It wasn't just a case of him believing he only needed to report the Pinnacle income and not the other two income from the other sources. He went beyond that and... Did you mean to say overstated or understated? As to Pinnacle, he overstated. And I think the reason that's significant is that seems to suggest that he knew, whoops, I'm caught with my hand in the... Is that because your argument is because he reported he only got $10,000 as an emergency room traveling physician over a one-year period and then he only got $7,000 or whatever, that he knew that the red flags would go up because how is he living on that? Yes. And then there's also the fact that the question is, did he believe in 2015 or could he have believed in 2015 or 2016? Could he have honestly believed that all of this income would have been reported by his wife? Well, the premise of that would be that two things, that that income that he didn't claim would have then had to been going to one of two places, I think. Either to bona fide overhead costs for ICC and I-Corps such as storage and travel, or perhaps to bona fide salary that his wife could have been earning for legitimate services that she might have provided in running those corporations. But both of those corporations were a one physician corporation. They had no other physicians on staff. They took in collectively $2 million over those four years and Dr. Adix collectively only reported $325,000. So is it plausible? Is it realistic to believe that he honestly thought in 2015 and 2016 when he filed that 85% of the income that he was earning could have been going to overhead costs, storage, and his wife's salary for running this one person corporation? It just does not seem plausible to me. All right. Thank you very much, Mr. Siakonin. Mr. Duck, we're going to give you an extra four minutes because we took Mr. Siakonin over and I think it's only fair. I don't know if I'm going to need that. You don't have to use it. That's okay. But if you need it, it's there. Let me start with one key point. Judge Lagoa asked, did Dr. Adix file jointly or separately? He filed separately. And that's key because obviously if he filed jointly, all this money would go into one bucket and it wouldn't really matter. But it does matter because he's responsible only for reporting his income and he's willfully responsible only for avoiding or understating his income. That's why it matters as to how the income flowed and what flowed to Pinnacle versus what didn't. In terms of the Pinnacle argument that was just made, to me it's just speculation. There's no evidence about what he thought about Pinnacle's income. The evidence is that he thought that his wife or he testified that his wife was supposed to report ICC income and I-Corp income. In terms of the harmless error argument, maybe I should have brought this up in my first argument, but I just want to hammer it home. To me, the best reason why this was not harmless error was in the government's closing argument, in their initial closing argument. Not the rebuttal closing argument, their initial closing argument. Government argued explicitly that, quote, $1.2 million in unreported income, unquote, was, quote, not Corrine Adix's income. That was the defendant's. That was their central argument, but their support was, the prosecutor said, recall that, quote, in opening, the defense told you that I-Corp and ICC were Corrine's companies. The defendant thought she would file for those, but there is zero evidence to support that statement. Zero evidence to support the statement that the defendant thought that these were Corrine's companies. But there was evidence to support that statement. It just wasn't let in. The evidence was that Corrine stepped up during a criminal investigation that she was under and filed for ICC and I-Corp. So what you have is the government twice keeps out evidence and then in closing argument uses that lack of evidence and twists the knife and says, aha. Let me ask you a question, though. I mean, why didn't you proffer, I know it wasn't you, but Dr. Adix, why didn't Dr. Adix proffer the returns? I mean, that would have made this so much easier. And not only that, I mean, there's no record here. We have no idea what's in there. We have no idea of whether she claimed the income, the rest of the income that Dr. Adix made. We have no idea about any of that. It's not in the record. And that was something that, you know, Dr. Adix had to do. I can't answer that question because I was not the trial counsel. I don't know. Okay. Well, why isn't that a problem? Let me put it to you that way. I Because the point was simpler. The point was simply that he was trying to introduce, the trial counsel was trying to introduce evidence to corroborate Adix's testimony that he believed I-Corp and ICC were her companies. The government contested that at trial because they said it's their. Well, I mean, he's listed as a, it wasn't even listed as some, or he signed some kind of or things of that nature for ICC and or I-Corp. I don't believe he signed corporation papers. I believe he signed contracts on behalf of ICC or I-Corp. I mean, that's kind of, isn't that a problem for your client? No, Your Honor, because it just makes it more important that this evidence that was excluded come in, right? Because the government put in this evidence that, well, first of all, these are Wyoming LLCs, so there's no name on the LLC, right? Then they put in evidence that money's going to both Corinne Adix and to Dr. Adix. That's helpful, actually. This was an LLC? They were both LLCs? I believe so, Your Honor. Okay. I believe so. Was a K-1 ever given out to Ms. Adix? We don't know. It's not in the record. I don't believe so. Okay. I mean, if his defense, obviously the government has to prove it's his income that he's responsible for, but the government presented evidence to that effect, and the jury accepted that evidence. So then Dr. Adix's defense is, well, whether it was my income or not doesn't really matter because I thought my wife was paying for, my wife was paying the taxes on that. She was filing the I mean, that's his defense, right? His defense, correct. That's his willfulness defense, lack of willfulness defense, correct. Right. But he didn't present, he didn't proffer the returns. He didn't do anything further to explain. I mean, the jury rejected his position that it wasn't his income after hearing him testify, and after seeing the rest of the evidence regarding where the money from ICC and I-Corp went, and after hearing how he responded to the IRS investigation, and after seeing what he did with respect to declaring only $10,000 in income originally. I mean, why is this harmful on this record? Because what the jury did not hear was an admission by conduct of his wife, that his wife, during the course of an investigation where she was a subject as well as Dr. Adix, stepped forward and claimed those two companies as hers. And that's also two years after he filed his returns, right? Correct. Isn't that two years after he filed his returns, which he filed in response to the same investigation? Correct. I mean, why couldn't the jury decide when it looked at this evidence that it didn't believe Dr. Adix? The jury decided that based on the evidence it heard, Your Honor. What it didn't hear was what was kept out. And so what I'm saying is, when you go back to the closing argument, and the government says there's zero evidence to support that I-Corp and ICC were Corrine's companies, there was evidence. They just kept it out. And then the jury's given that without hearing that key evidence. They should have heard that evidence, and then they should have decided. That's what I think. All right. Thank you very much. Appreciate your arguments. Our next case is Alpha Phi Alpha Fraternity, Inc. versus